WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Navigators Specialty Insurance Company, a New York Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Nationwide Mutual Insurance Company,<br><br>Defendant. | No. CV-13-01062-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Motions for Summary Judgment from Plaintiff and Defendant. (Docs. 35, 49.) For the following reasons, Defendant's Motion is granted in part and denied in part and Plaintiff's Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Navigators Specialty Insurance Company ("Navigators") is seeking contribution from Defendant Nationwide Mutual Insurance Company ("Nationwide")[1] for legal defense costs and a settlement payment made on behalf of Titan Framing Company ("Titan"). Both insurers had issued policies for the relevant period to Titan. (Doc. 1.) Navigators insured Titan under a General Commercial Liability Policy with $1,000,000 per occurrence limits and $2,000,000 general aggregate limits. ("GCI Policy"). (Doc. 43 at 2.) Nationwide insured Titan under a Business Auto Policy with a $1,000,000 liability limit ("Auto Policy"). (*Id.*)

---

[1] Navigators also initially named Allied Insurance Company, ABC Corporations I-X, and XYZPartnership I-X as defendants. (Doc. 11.) However, on July 26, 2013, both Navigators and Nationwide stipulated to a dismissal of these parties. (Doc. 21.)

1      On November 21, 2007, Titan held a Thanksgiving breakfast/lunch picnic at its
2 office yard (the "Event"). (*Id.* ¶ 5; Doc. 36 ¶ 5.) The company provided food and non-
3 alcoholic beverages and paychecks were distributed to employees. (*Id.*) Titan prohibited
4 the consumption of alcoholic beverages at the picnic. (*Id.* ¶ 9.) It had a company policy
5 of "no alcohol" on Titan premises or any of the job sites, and this policy was well-known
6 amongst the employees. (*Id.* ¶ 10.) The picnic was attended by the President and sole
7 shareholder of Titan, David Williams. Between 1:00 and 2:00 pm Williams stated that he
8 was going home and informed the rest of the attendees that "[y]ou need to go home
9 because you've been given the day off." (*Id.* ¶¶ 11–12.) Some employees informed Mr.
10 Williams that they would stay to clean up. (*Id.* ¶ 13; Doc. 43 at 6.) At approximately
11 3:00 p.m., between 10 to 12 employees who remained at the Titan premises began
12 drinking beer they had brought with them. (Doc. 59 at 29.) The highest ranking
13 employee who remained, Jaime Bencomo, stated that "they knew they could not drink"
14 on the premises, but he did not stop his fellow employees from drinking and consumed
15 "six, seven, eight beers" himself. (*Id.* at 30.) No employee who remained, including
16 Bencomo, had the authority to alter Titan's alcohol ban on its premises. (*Id.* at 31.)

17      One of the employees drinking alcohol after the Event was Ivan Cortes Aquino
18 ("Aquino"). (*Id.* ¶ 18.) Another employee who remained at the yard was informed over
19 the telephone by Aquino's brother not to let Aquino drive home intoxicated. (*Id.* ¶ 19.)
20 Because Aquino was suspected of being intoxicated, Titan employee Eduardo Macias
21 took Aquino's car keys away from him. (*Id.* ¶ 20.) Once Aquino agreed to not drive
22 home, and accepted a ride from a fellow co-worker, Macias returned his car keys to him
23 so he could return the next day to retrieve his vehicle. (*Id.* ¶ 21.) According to the
24 deposition testimony, after Aquino received his keys, he escaped out of his co-worker's
25 vehicle while it was stopped waiting for the gate to open at the exit of the Titan lot. (*Id.*)
26 He then jumped into the vehicle he had driven to the picnic, a 1995 Ford Explorer. (*Id.*)
27 After entering the Explorer, Aquino locked the doors and windows and sped away from
28 the Titan premises. Aquino left the Titan premises sometime before 7:00 p.m.,

1  eventually drove the wrong direction on a highway, and hit a car driven by Sean McArdle
2  head-on (the "Accident"). (*Id.* ¶ 25; Doc. 48 at 3.) Both McArdle and Aquino were
3  killed. (*Id.*)

4  Toxicological tests revealed that Aquino's blood contained 0.201% w/v ethyl
5  alcohol, indicating his ability to drive was impaired by alcohol. (Doc. 36 ¶ 29.) The
6  Ford Explorer driven by Aquino was owned by Aquino's brother, Wilfredo Cortes
7  Aquino, who lent the car to Aquino that day. (*Id.* ¶ 27.) On November 14, 2008, Susan
8  McArdle, the mother of Sean McArdle, filed a wrongful death lawsuit against the Estate
9  of Ivan Cortes Aquino, Titan, and Wilfredo Cortes Aquino in Maricopa County Superior
10 Court, case number CV2008-027929 (the "McArdle Complaint"). (*Id.* ¶ 31; Doc. 43 ¶
11 14.) The McArdle Complaint alleged that Titan hosted a party where it knowingly
12 invited Ivan and permitted him to consume alcohol; that Titan assumed a duty to prevent
13 Ivan from driving while intoxicated; that Titan's employees were negligent in allowing
14 Aquino to drive away from Titan's premises after the Event knowing, or having reason to
15 know, that Aquino was intoxicated; and that Titan was vicariously liable for the acts of its
16 employees who were all acting within the scope of their employment. (Doc. 36 ¶ 32.)

17 Shortly after the McArdle Complaint was filed, Titan tendered the matter to
18 Navigators and Navigators agreed to defend Titan under a reservation of rights. (*Id.* ¶
19 33.) On April 28, 2010, Nationwide (then as Allied Insurance) was contacted by
20 Navigators' attorney, James Evans, requesting via letter that Nationwide take over
21 defense and indemnity obligations in the McArdle matter. (*Id.* ¶ 34.) The letter advised
22 that the parties were attempting to schedule a settlement conference, and requested
23 Nationwide's participation in the mediation. (*Id.* ¶ 36.) On May 18, 2010, Ann Conroy
24 from Nationwide acknowledged the tender from Mr. Evans and stated "We further
25 understand that there is a settlement conference being scheduled shortly." (Doc. 59 at
26 10.) Ms. Conroy also stated that Nationwide would provide a substantive response to the
27 tender after concluding its coverage investigation. (Doc. 43 at 16.) On June 7, 2010, the
28 McArdles' lawyer requested a copy of the Auto Policy from Nationwide. (Doc. 59 at

10.) On June 24, 2010, Ms. Conroy sent a letter to Mr. Evans with a copy of the Auto Policy. (Doc. 59 at 10.) Nationwide did not respond to the substance of Mr. Evans' prior tender request in this letter. (*Id*. at 24.) Mr. Evans sent a letter on July 19, 2010 to Nationwide stating that the McArdle case had settled on July 15, 2010 for $400,000.00. (*Id*. at 44.)

On November 23, 2010, counsel retained by Navigators sent a letter to Nationwide, claiming that coverage existed under the Nationwide Auto Policy and requested payment of half the amounts paid to defend and settle the claims in the McArdle Complaint for a total requested amount of $253,718.82. (*Id*. at 44–45.) On February 15, 2011, Navigators reiterated its request that Nationwide share in the defense fees and costs incurred in representing Titan. (*Id*. at 12.) On December 12, 2011, Navigators' counsel again requested that Nationwide share in the defense fees and costs, and included a draft complaint for equitable contribution and indemnification that it intended to file within 30 days. (*Id*. at 12–13.) On December 16, 2011, Ms. Conroy responded to Navigators' counsel via telephone and stated that she had been "procrastinating" on this file. (*Id*. at 13.) On January 13, 2012, Nationwide denied coverage under the Auto Policy. (*Id*. at 13–14.) On January 13, 2012, Nationwide responded that it was not going to provide any amounts to Navigators as a contribution for defense and indemnity obligations because, Nationwide claimed, the Auto Policy did not provide coverage. (*Id*. at 45.)

After some correspondence regarding contribution, Navigators filed the present action on May 24, 2013. (*Id*. at 45–46; Doc. 1.) Navigators' Motion for Summary Judgment requests payment of $418,357.46[2] (the full settlement paid, plus half of the post-tender defense costs). (Doc. 48 at 21.) Nationwide's Motion for Summary Judgment contends that the Auto Policy issued to Titan (the "Auto Policy") does not

---

[2] Elsewhere, Navigators alters this dollar amount request. In its combined Response/Reply brief Navigators states that it "paid $107,437.64 to defend" and "$400,000 to indemnify" Titan, and that "equity demands that Nationwide reimburse Navigators for those expenses." (Doc. 61 at 17.)

- 4 -

provide coverage for the claims in the McArdle Complaint, and alternatively that the claims were not properly nor timely tendered to them, defeating or limiting the amount of indemnity to which Navigators is entitled. (Doc. 35.)

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (original emphasis omitted) (quoting *Anderson*, 477 U.S. at 250).

The interpretation of an insurance contract is a question of law to be determined by the court. *Sparks v. Republic National Life*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (Ariz. 1982). The provisions of an insurance contract are interpreted according to their plain and ordinary meaning. *National Bank of Arizona v. St. Paul Fire and Marine Insurance Co.*, 193 Ariz. 581, 584, 975 P.2d 711, 713 (Ct. App. 1999). "[T]o determine the meaning of a clause which is subject to different interpretations or constructions, [courts] examin[e] the purpose of the clause, public policy considerations, and the transaction as a whole." *Arizona Property & Casualty Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 134–35, 735 P.2d 451, 456–57 (Ariz. 1987); *see also Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 355, 694 P.2d 181, 185 (Ariz. 1984).

**II.     Coverage for Titan under the Auto Policy for the McArdle Claims**

The Auto Policy issued by Nationwide to Titan agrees to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applied caused by an 'accident' and resulting from the ownership maintenance, or use of a covered auto."[3]  (Doc. 36-1 at 110.)  "Insured" is defined as both (a) "You [Titan] for any covered auto," and (b) "Anyone else while using with your permission a covered auto you own, hire or borrow . . ." (*Id*.)  Coverage under (b) is not at issue here.  There is no evidence that Aquino had Titan's permission to use the Ford Explorer, nor is there is any evidence that Titan had owned, borrowed, or hired the Explorer.  Coverage is, however, available under section (a).[4]  The issue here is whether the McArdle Complaint alleges a claim that "[Titan] legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applied caused by an 'accident' and resulting from the ownership maintenance, or use of a covered auto." (*Id*.)

Under Arizona law, the phrase "use of" a covered auto, has been interpreted to require use of an automobile in its intended manner. *Brenner v. Aetna Ins. Co.*, 8 Ariz. App. 272, 275, 445 P.2d 474, 477 (1968) (for coverage to exist, an insured must be using the vehicle pursuant to the "inherent nature" of the vehicle);  In the present case, the injuries resulted from driving the vehicle in a negligent manner.   Driving a vehicle is within its ordinary and intended use. *See, e.g.*, *Colorado Cas. Ins. Co. v. Safety Control Co.*, 230 Ariz. 560, 567, 288 P.3d 764, 771 (Ct. App. 2012), review denied (Mar. 19, 2013) ("Arising out of is a broad, general, and comprehensive term effecting broad coverage.  For claimed damages to 'arise out of' an event, there must be evidence of a 'causal relationship' between the damages and the event, but proximate causation is not

---

[3] "Auto" is a defined term within the Auto Policy, but its definition is not at issue in this case and the parties have omitted quotation marks around this term in their briefing.  The Court will do the same.

[4] Navigators admits that "[t]his case is not about [Aquino's] coverage, or Titan's coverage for vicarious liability. It is about Titan's coverage for its own independent liability." (Doc. 48 at 8.)

1  required."). Because there has been bodily injury caused by an accident, the pivotal
2  question of coverage is whether the accident resulted from the "ownership maintenance,
3  or use of a covered auto."[5]

4  However, this standard does not mean that "there must be a causal connection
5  between *Titan's* use of an automobile and bodily injury." (Doc. 54 at 3.) The policy
6  language makes no such restriction. The language of the policy is clear that coverage is
7  given for "use of a covered auto." The Auto Policy does not contain a definition of
8  "covered auto." Rather it contains a "covered auto" designation table. (Doc. 36-1 at
9  109.) The insured can then designate, using symbols from the table, the "covered auto"
10 categories it would like to elect for coverage on the declarations page. (*Id*.; *Id*. at 94.)
11 Titan selected the category of "any auto," which does not contain a more detailed
12 description. (*Id*. at 109.)  According then to the plain meaning of the policy then, Titan
13 has coverage under the Auto Policy for Titan's legal liability for injuries resulting from
14 the use of any auto. *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, 13
15 P.3d 785, 788 (Ariz. Ct. App. 2000) (Arizona "construe[s] provisions in insurance
16 contracts according to their plain and ordinary meaning.").

17 The Ninth Circuit has so determined in a factually analogous case governed by
18 California law. *See Pac. Emp. Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270 (9th Cir.
19 1998). In *Domino's*, a pizza delivery employee was involved in an accident driving
20 home from work in his personal car. The complaint against Domino's asserted liability
21 due to the employee being compelled to work 31 of the previous 36 hours delivering
22 pizzas, after which Domino's knew he would need to drive home 60 miles when his shift
23 concluded. *Id*. at 1272. The employee got into an accident and the injured parties sued
24 Domino's. *Id*. Domino's agreed to pay a settlement and the issue before the court was
25 which of several insurance policies were triggered by the accident. *Id*. at 1272–73. One
26 policy was an auto liability line of insurance with nearly identical language to the

---

28  [5] Neither party has argued that coverage is limited here based on the phrase "to which this insurance applied."

Nationwide Auto Policy at issue here. *Id.* at 1274. The Domino's auto policy agreed to "pay all sums Domino's is legally required to pay 'caused by an accident' and resulting from the 'ownership, maintenance or use of a covered auto.'" *Id.* Just like Titan, Domino's had selected "any auto" in the covered auto section. *Id.* The Ninth Circuit upheld the District Court's holding that Domino's auto coverage was triggered by the accident. *Id.* at 1272. The Ninth Circuit, citing California state law precedent, held that the employee's personal car was a "covered auto" under the "any auto" designation in Domino's auto policy. *Id.* at 1275; *See Travelers Indem. Co. v. Swearinger*, 169 Cal.App.3d 779 (1985) (holding that a vehicle owned by a host family for a school overnight event fell under the "any auto" designation in the school district's auto policy).

Nationwide cites *Ogden v. U.S. Fid. & Guar. Co.*, 188 Ariz. 132, 933 P.2d 1200 (Ct. App. 1996) to argue that Arizona law differs from California law, but, if anything, *Ogden* demonstrates that, in fact, the law of the two states is the same.[6] In *Ogden*, an employee of J.M. Steel Erecting ("J.M.") caused an accident, killing one person and injuring another, while driving a vehicle previously owned by J.M. that the employee had subsequently purchased. *Id.* at 137, 933 P.2d at 1205. In deciding the questions presented, the Court of Appeals did not need to decide whether the employer's insurance that covered it for "any auto" covered the employer because all the parties conceded that it did. *Id.* at 135, 933 P.2d at 1203 ("USF&G acknowledged by letter that its policy provided coverage to J.M. and Soykos, and it advised that it was defending those parties unconditionally."). The issue in that case was whether the "any auto" policy covered the employee. *Id.* Here, whether or not the policy provided coverage to the employee is not

---

[6] A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state. *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 524 (9th Cir. 1989). Thus, this court looks to the law of Arizona to determine the issues raised by the present motions. In the absence of controlling state law, "a federal court must use its own best judgment in predicting what the Arizona Supreme Court would decide." *Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426, 434–35 (9th Cir. 1978). In anticipating the decision of a state's highest court, "a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980) (citing C. Wright, Law of Federal Courts 271 n. 32 (3d ed. 1976)).

at issue. Thus *Ogden* does not address the point. To the extent it does, the fact that the parties conceded that coverage was available for the employer suggests that the policy provides coverage.

Nationwide also cites a case from the District of Hawaii its argument against coverage, but this case is likewise off point. (Doc. 35 at 9, *citing Mossman v. Transamerica Ins. Co.*, 816 F. Supp. 633 (D. Haw. 1993), *aff'd*, 28 F.3d 107 (9th Cir. 1994).) Similar to *Ogden*, the Court in *Mossman* did not interpret the auto policy regarding coverage for the named insured. *Mossman* at 637. The primary issue in *Mossman* was whether the driver, the stepson of an officer of a company that had an auto insurance policy, was an insured under the policy. *Id*. The court in *Mossman* held that coverage did not exist for the driver. *Id*. But, again, that issue is not the one presented here.

Nationwide issued the Auto Policy to Titan promising to "pay all sums [Titan] legally must pay" because of an "accident and resulting from the ownership maintenance, or use of a covered auto." (Doc. 36-1 at 110.) In Arizona, "if an insurer wishes to limit its liability, it must employ language in the policy which clearly and distinctly communicates to the insured the nature of the limitation." *Roberts v. State Farm Fire & Cas. Co.*, 146 Ariz. 284, 285-86, 705 P.2d 1335, 1336-37 (1985) (citing *Sparks*, 132 Ariz. at 535, 647 P.2d at 1133). In addition, "ambiguous terms in a contract of insurance are to be strictly construed in favor of the insured and coverage and against the insurer." *Id*.; *State Farm Mut. Auto. Ins. Co. v. Paynter*, 122 Ariz. 198, 204, 593 P.2d 948, 954 (App.1979). Titan chose the "any auto" definition for "covered auto." If Nationwide wanted to limit coverage to only uses of autos that Nationwide anticipated or approved of, it could have done so. It did not. Based on the plain language of the policy, coverage is available under the Auto Policy for Titan's liability for the claims in the McArdle Complaint.

/ / /

/ / /

### III. Navigators' Entitlement to Equitable Contribution, Indemnification, and Subrogation

Navigators is seeking reimbursement from Nationwide for its share of defense costs through the doctrine of equitable contribution, equitable indemnification, and/or equitable subrogation. (Doc. 1 at 7–10.) Equitable contribution "is not derivative from any third person, but exists as an independent action by one insurer against another." *Am. Cont'l Ins. Co., Inc. v. Am. Cas. Co. of Reading, Pa.*, 183 Ariz. 301, 302, 903 P.2d 609, 610 (App. 1995) ("*Reading I*"). Three elements must be satisfied to establish an equitable contribution claim: (1) the two insurers must insure the same risk; (2) neither can be the primary insurer; and (3) the loss sustained must be caused by the risk insured against. *Mut. Ins. Co. of Arizona v. Am. Cas. Co. of Reading Pennsylvania*, 189 Ariz. 22, 25, 938 P.2d 71, 74 (Ct. App. 1996) ("*Reading II*"). Navigators concedes that Nationwide and Navigators insured different risks. (Doc. 48 at 11.) Thus, its claim for equitable contribution is inapplicable.

Equitable subrogation is a doctrine that is intended "to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it, and prevent a windfall at the expense of another." *Sourcecorp., Inc. v. Norcutt*, 227 Ariz. 463, 467, 258 P.3d 281, 285 (App. 2011) (quoting *Rowly Plastering Co. v. Marvin Gardens Dev. Corp.*, 180 Ariz. 212, 214, 883 P.2d 449, 451 (App. 1994)). The Arizona Supreme Court has recognized an action between multiple insurers for equitable subrogation to recover defense costs "[f]rom another insurer who had a similar obligation to the same insured but failed to perform it." *Nat'l Indem. Co. v. St. Paul Ins. Co.*, 150 Ariz. 458, 459, 724 P.2d 544, 545 (1986); *see also Regal Homes, Inc. v. CNA Ins.*, 217 Ariz. 159, 169, 171 P.3d 610, 620 (Ct. App. 2007). Navigators has argued that Nationwide is entirely responsible for coverage of Titan's liability, but has not done so consistently. *See, e.g.*, Doc. 61 at 10 ("Even if Navigators and Nationwide did not insure against the same risk, they owed similar obligations to Titan.") Additionally, Navigators has put forth no convincing arguments that its obligations under the GCI policy were not triggered by the

1   McArdle Complaint. Therefore, both Nationwide and Navigators had a similar duty to
2   defend and indemnify Titan for its liability for the Accident. Therefore, Navigators has a
3   claim for equitable subrogation "to compel contribution for a share of the cost of
4   defense" from Nationwide. *National Indemnity*, 150 Ariz. at 459, 724 P.2d at 545.[7]

5   Nationwide claims that at the time of the settlement it was still conducting its
6   investigation of coverage and had not yet denied coverage. Because Nationwide had not
7   yet denied coverage, it argues that it cannot be bound to the settlement because an
8   "insurer must be in breach of its contract or must be defending subject to a reservation of
9   rights before it can be bound to a settlement made by the insured without its consent."
10  (Doc. 54 at 23 (citing *Colorado Casualty Insurance*. 230 Ariz. at 565–66, 288 P.3d at
11  769–70).) However, *Colorado Casualty* was analyzing the applicability of a
12  *Damron/Morris* agreement, in which an insured admits to liability and assigns breach of
13  contract and bad faith claims against insurer to claimant in exchange for a covenant not to
14  execute against insured. The same is true of the other cases Nationwide cites. (Doc. 54
15  at 23 (citing *Leflet v. Redwood Ins. Fire & Cas. Ins. Co.,* 226 Ariz. 297, 302, 247 P.3d
16  180, 185 (App. 2011) and *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 119, 741
17  P.2d 246, 252 (1987). Titan did not enter into a *Damron/Morris* agreement and there is
18  no allegation that Titan breached its cooperation clause. Therefore, it is not necessary to
19  find that Nationwide breached its duty to Titan in order to find that it is bound to
20  contribute to the settlement that resolved the claims against Titan. Arguments based on
21  cases involving *Damron/Morris* agreements

> confuse[] the rules applicable to equitable contribution *among insurers* with those pertinent to the relationship between an insurance carrier *and its own insured*. An insurer's obligations to an insured are governed by the contract of insurance between the parties. In contrast, the reciprocal contribution rights and obligations of several insurers covering the same risk do not arise from and are not governed by contract; instead they flow from equitable principles

---

[7] Because the doctrine of equitable subrogation provides relief, there is no need to address whether the doctrine of equitable indemnification would likewise do so.

- 11 -

> designed to accomplish ultimate justice in the bearing of a specific burden.

*Nucor*, 231 Ariz. at 421-22, 296 P.3d at 84-85 (emphasis in original) (internal citations omitted). Because the current dispute is between two insurers, Nationwide's obligation to pay its share of the defense costs is not triggered by a breach of the policy or improper denial of the claim, but by a finding that the Auto Policy also provided coverage for the McArdle claims. *Id.* 231 Ariz. at 22, 296 P.3d at 85 (holding that admonishment for breach of insurer's obligation to insured is not applicable to equitable share dispute between insurers).

Nationwide also argues that it cannot be held responsible for the amount paid to settle the McArdle action because it was not properly "vouched in" to the settlement. (Doc. 54 at 24.) The cases cited by Nationwide for the vouching in requirement all involve disputes over products liability judgments, not insurance coverage. (*Id.* (citing *Foremost-McKesson Corp. v. Allied Chem. Co.,* 140 Ariz. 108, 680 P.2d 818 (App. 1984) and *Bloch v. Arrowhead-Puritas Waters, Inc.*, 798 F.2d 1238, 1240 (9th Cir. 1986)).) No cases cited by either party involving equitable relief between insurers point to any requirement for an insurer with a valid liability claim against it to "vouch in" to a settlement of the underlying lawsuit. The purpose of an equitable remedy between insurers for settlement and defense costs is "to accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others." *Nucor Corp. v. Employers Ins. Co. of Wausau*, 231 Ariz. 411, 422, 296 P.3d 74, 85 (Ariz. Ct. App. 2012), review denied (Apr. 23, 2013). Allowing Nationwide to avoid its share of the settlement and defense costs for a claim its policy covered would allow it to profit at the expense of Navigators. Nationwide has made no claim that the amount of the settlement is unreasonable or that the defense provided by Navigators was unsatisfactory in any way. Nationwide was tendered with the McArdle claims three months before the settlement, was notified of settlement negotiations, and was asked to participate. Nationwide could have joined in defense of

1  the matter, but chose not to. Nationwide cannot now claim that it should not be held
2  responsible for the settlement that resolved the claims because it did not participate in the
3  settlement negotiations even though it was invited to do so.

4  In order to recover an equitable share of defense costs from a co-insurer, the co-
5  insurer's policy must be primary, rather than excess coverage. *Regal Homes*, 217 Ariz. at
6  167-68, 171 P.3d at 618-19; *Nucor Corp.,* 231 Ariz. at 420-21, 296 P.3d at 83-84. Here,
7  both policies have "other insurance" clauses that apply to the current situation,
8  purportedly making each policy an excess coverage policy to be accessed only after the
9  primary coverage for the liability has been exhausted. Section IV(4)(b)(1)(d) of the
10 Navigators GCI Policy states that "this insurance is excess over . . . any of the other
11 insurance. . . if the loss arises out of the maintenance or use of aircraft, autos or
12 watercraft." [8]  (Doc. 43 ¶ 51.)  The loss here arose out of the use of an auto, making
13 coverage for the loss "excess coverage" under the GCI Policy. Similarly, Section
14 IV(B)(5)(a) of the Nationwide Auto Policy states that "[f]or any covered auto you own,
15 the Coverage Form provides primary insurance. For any covered auto you don't own the
16 insurance provided by this Coverage Form is excess over any other collectible
17 insurance." (Doc. 43 ¶ 53.)  It is undisputed that Titan did not own the auto at issue in
18 the McArdle Complaint. Therefore, the Auto Policy is also excess insurance over other
19 collectible insurance.

20 The Arizona rule in this situation, however, "is that where two policies cover the
21 same occurrence and both contain 'other insurance' clauses, the excess insurance
22 provisions are mutually repugnant and must be disregarded. Each insurer is then liable
23 for a pro rata share of the settlement or judgment." *Harbor Ins. Co. v. United Servs.*
24 *Auto. Ass'n*, 114 Ariz. 58, 63, 559 P.2d 178, 183 (Ct. App. 1976); *See also Regal Homes*,
25 217 Ariz. at 168, 171 P.3d at 619. In evaluating "other insurance" provisions,

---

[8] Nationwide argues that this "other insurance" clause does not apply because "the loss arose out of Titan's dram shop liability rather than the use of an auto." (Doc. 54 at 12.)  As explained above, even if there is a dram shop liability claim or claims asserted, the loss arose out of the use of an auto, triggering Nationwide's Auto policy and the "other insurance" clause of the Navigators GCI Policy.

- 13 -

> it is the substance of the language at issue, not its title or form, that determines whether it is an 'other insurance' provision. [The Arizona] supreme court has explained that "'other insurance' clauses 'seek to limit or eliminate coverage under the policy in the event the insured has other insurance available.'

*Regal*, 217 Ariz. at 167, 171 P.3d at 618. (quoting *Fremont Indem. Co. v. New England Reinsurance Co.,* 168 Ariz. 476, 477, 815 P.2d 403, 404 (1991)). Since both the Auto and GCL Policies' excess insurance provisions attempt to disclaim primary coverage, they are mutually repugnant "other insurance" clauses and will both be disregarded.

Both Navigators' GCL Policy and Nationwide's Auto Policy provide primary coverage for the allegations in the McArdle Complaint. Under the doctrine of equitable subrogation, Navigators is entitled to reimbursement for Nationwide's equitable pro rata share of the settlement amount and defense costs.

## IV. Nationwide's Equitable Share of Settlement and Defense Costs

In general, "allocating defense costs among insurers is a matter of equitable judicial discretion." *Nucor Corp. v. Employers Ins. Co. of Wausau*, 231 Ariz. 411, 422, 296 P.3d 74, 85 (Ct. App. 2012). Nationwide argues that its share of the settlement and defense costs should be reduced because it was prejudiced by Navigators' untimely and improper tender of the claims to Nationwide. The McArdle Complaint was filed on November 14, 2008, and it is undisputed that the first tender to Nationwide by Navigators' attorney occurred on April 28, 2010, 17 months after the commencement of the suit. (Doc. 45 ¶ 20.) The suit was settled on July 15, 2010 before Nationwide gave a substantive response to the tender and without Nationwide's participation. (*Id*. ¶ 27; Doc. 36 ¶¶ 35, 38.)

Nationwide first argues that the tender of the claims to Nationwide was defective because the tender came from Navigators' attorney, rather than from Titan, the insured. The attorney who sent the letter, Mr. Evans, was hired by Navigators as Titan's defense attorney. (Doc. 43 Ex. 5 ¶¶ 1, 7.) As such, he was an agent of both Navigators and Titan. *Cahn v. Fisher*, 167 Ariz. 219, 221, 805 P.2d 1040, 1042 (Ariz. App.1990) ("A lawyer is

- 14 -

1  the agent of his client, and the rules of agency law generally apply to the attorney-client
2  relationship."); *see also Parsons v. Cont'l Nat. Am. Grp.*, 113 Ariz. 223, 227, 550 P.2d
3  94, 98 (1976) (A lawyer retained by an insurer to defend an insured owes an undeviating
4  and singular allegiance to the insured.).  Tender of claims by someone acting on behalf of
5  the insured triggers the insurer's contractual obligations.  *Aetna Cas. & Sur. Co. v.*
6  *Chicago Ins. Co.*, 994 F.2d 1254, 1259 (7th Cir. 1993).  The substance of Mr. Evans'
7  tender also sufficiently put Nationwide on notice that the claims in the McArdle action
8  potentially triggered coverage under the Auto Policy.  Tender of the insurance claims by
9  Mr. Evans to Nationwide was sufficient.

10  Nationwide also argues that tender was improper because it was untimely. An
11  insurer may only assert untimely notice as a coverage defense when it has been
12  prejudiced by the timing of that notice.  *See Liberty Mut. Fire Ins. Co. v. Mandile*, 192
13  Ariz. 216, 224, 963 P.2d 295, 303 (Ct. App. 1997).  Nationwide concedes that it must
14  establish prejudice, but argues that the Court should find prejudice as a matter of law.
15  (Doc. 54 at 18.)   It argues that Nationwide was substantially prejudiced by not being able
16  to participate in discovery where "it would have been able to uncover facts that would be
17  relevant to asses any coverage obligations owed to Titan."   (*Id*.)   This assertion of
18  potential prejudice is insufficient.  While it is true that Nationwide has the "right to refuse
19  to defend or indemnify Titan based upon the actual rather than the alleged facts," *See*
20  *Kepner v. Western States Fire Insurance Co*., 109 Ariz. 329, 509 P.2d 222 (1973), "the
21  duty to defend carries with it the conditional obligation to indemnify until it becomes
22  clear that there can be no recovery within the insuring clause."  *Mead*, 166 Ariz. at 62,
23  800 P.2d at 49.  Additionally, in cases "terminated by settlement rather than final
24  judgment" where "[t]here are no factual findings to consider in determining which
25  insurers are obligated to indemnify," "the duty to indemnify must follow the duty to
26  defend." *Id*.

27  Nationwide has not put forth any evidence related to prejudice from the untimely
28  tender.  As to its claim for prejudice as a matter of law, Nationwide also proposes no fact

1  that it could have uncovered during discovery that would have released it from coverage
2  under the Auto Policy.  None is apparent.  Nationwide's obligation to indemnify Titan for
3  liability regarding the Accident was based on the fact that Titan faced legal liability due
4  to injuries resulting from the use of an auto.  Titan fails to offer any plausible theory as to
5  how and what facts it could have discovered in defending the underlying litigation that
6  would have shown either that (1) no injuries occurred or (2) the injuries were not the
7  result of the use of an auto.  It is undisputed that Sean McArdle was killed when his car
8  was struck by the car driven by Acquino after leaving the Titan lot.  In addition, in
9  Arizona an insurer defending an insured owes the insured "an undeviating and single
10 allegiance." *Parsons*, 113 Ariz. at 227, 550 P.2d at 98.  As such, an insurer's retained
11 lawyer for an insured "cannot be used as an agent of the company to supply information
12 detrimental to the insured," such as information designed to deny coverage.  *Id*.
13 Additionally, If Nationwide sought to uncover facts that would obviate its duty to
14 indemnify Titan, it has had from the date of tender, April 28, 2010, until now, to do so.
15 There is no genuine dispute as to the fact that Nationwide was not prejudiced by the
16 untimely tender of the McArdle claims against Titan.

17       Nationwide also claims that it should not be bound by the settlement in whose
18 negotiation it had no participation.   Nationwide was not notified of the McArdle action
19 until long after the action was filed, and there is no evidence that Nationwide was notified
20 of the specific meeting that resulted in settlement.  However, Nationwide had three
21 months to give a substantive response to the tender of claims (Doc. 43 ¶ 20), was asked to
22 participate in the defense of the matter, including settlement talks (*Id*. ¶ 22), and was
23 aware two months before the action was settled that a settlement conference was being
24 scheduled shortly (*Id*. ¶ 23).   Nationwide offers no evidence that it ever investigated
25 whether it had coverage, inquired further about the progress of the action, or made any
26 attempts to participate in its defense or settlement negotiations.   Ms. Conroy, the
27 Nationwide employee corresponding with Navigators regarding the McArdle action even
28 admitted that she had "procrastinated" regarding the Titan claim.  (Doc. 59 at 13.)  To

claim now that Nationwide should not be bound by the settlement even though their Auto Policy applies to the claims would be unjust. An action between two insurers over contribution to a settlement is governed "under principles of equity." *Nat'l Indem. Co. v. St. Paul Ins. Companies*, 150 Ariz. 492, 494, 724 P.2d 578, 580 (Ariz. Ct. App. 1985). "Where two or more insurers share responsibility for a loss, it should not be left to the discretion of the loss claimant to decide which insurer should pay the entire claim." *Reading II*, 189 Ariz. at 26, 938 P.2d at 75 (citing *Reading I*, 183 Ariz. at 303, 903 P.2d at 611 (Ct. App. 1995). Such a result would give the insurer an incentive "to avoid paying a just claim in hopes that the claimant will obtain payment from the co-[insurer]." *Id*. Similarly, it should not be left to the discretion of the insured to decide which insurer should pay the entire claim.

As to the specific amount of each insurer's share of costs, "[g]enerally, the method of allocating defense costs among insurers is a matter of equitable judicial discretion." *Nucor*, 231 Ariz. at 422, 296 P.3d at 85 (citing *Centennial Ins. Co. v. United States Fire Ins. Co.*, 88 Cal. App. 4th 105, 111 (2001). Each insurer is generally responsible for their pro rata share. *Id*. Both policies provide primary coverage for Titan's liability for the McArdle claims and the settlement amount is well below each policy's limit. Equity here dictates that Nationwide be held responsible for an equal portion of the settlement amount.

As to the defense costs, Titan claims that they were still investigating whether the Auto Policy applied to the McArdle claims when they received word that the case had settled. (Doc. 35 at 5.) Navigators, on the other hand, has given no justification for its 17 month delay in tendering the McArdle claims to Nationwide. Nationwide's duty to defend Titan arose when the claims were tendered to it. *See Quanta Indem. Co. v. Amberwood Dev. Inc.*, CV-11-01807-PHX-JAT, 2014 WL 1246144 (D. Ariz. Mar. 26, 2014) ("An insurer may recover under equitable contribution from only those insurers to whom the insured has tendered the claims at issue."); *St. Paul Fire & Marine Ins. Co. v. Ohio Cas. Ins. Co.*, CV-11-1954-PHX-SMM, 2014 WL 1285824 (D. Ariz. Mar. 28,

1   2014) (insurer's duty to defend arose when defense was tendered).  Navigators asserts
2   that there are factual issues as to whether it should recover the whole $107,437.64 in
3   defense costs, but presents no factual issues to justify that assertion.  (Doc. 49 at 18.)
4   Nationwide concedes that Navigators "would only be entitled to recover an equitable
5   share of those defense costs that post-date the tender."  (Doc. 35 at 13 (citing *Manny v.*
6   *Anderson's Estate*, 117 Ariz. 548, 550, 574 P.2d 36, 38 (Ct. App. 1977) (holding "the
7   obligation to defend does not arise until the insurer is presented with a complaint").)
8   Navigators asserts that it incurred $36,714.92 of defense costs after April 28, 2010, the
9   date of tender. (Doc. 59 at 20.)  Because Nationwide's duty to defend arose upon tender
10  of the claim, it is responsible for half the amount of post-tender defense costs, or
11  $18,357.46.

## V.   Attorneys' Fees

Both parties have requested attorneys' fees associated with the pursuit and defense of this action pursuant to A.R.S. §§ 12-341 and 12-341.01(A).  (Doc. 49 at 20; Doc. 54 at 27.)  "Cases interpreting section 12–341.01(A) focus on the substance of the action rather than its label."  *California Cas. Ins. Co. v. Am. Family Mut. Ins. Co.*, 208 Ariz. 416, 422, 94 P.3d 616, 622 (Ct. App. 2004) (citing A.*H. v. Arizona Property & Cas. Ins. Guar. Fund*, 190 Ariz. 526, 530, 950 P.2d 1147, 1151 (1997)).  Because the substance of a case involving allocation of costs among insurers is "determined by considering the terms of the insurance contract between [the insurer] and its insured," such cases arise out of contract.  *Id*.  As such, such cases give rise to an award of attorneys' fees.  *Id*.; *W. Agr. Ins. Co. v. Indus. Indem. Ins. Co.*, 172 Ariz. 592, 597, 838 P.2d 1353, 1358 (Ct. App. 1992).

## CONCLUSION

The Nationwide Auto Policy offers to pay all amounts Titan is legally required to pay for bodily injury caused by an accident and resulting from the use of any auto.  The McArdle claims involved potential legal liability to Titan for injuries resulting from a car accident.  The Auto Policy therefore provides coverage for the McArdle claims.  Based

on that coverage, Navigators is entitled to equitable subrogation from Nationwide for half of the $400,000 paid by Navigators to settle the McArdle claims. Navigators is also entitled to reimbursement from Nationwide for one half of Navigators' post-tender defense costs.

**IT IS HEREBY ORDERED** that Defendant Nationwide's Motion for Summary Judgment (Doc. 35) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 49) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Nationwide is required to reimburse Navigators in the amount of $218,357.46 for its share of the costs incurred by Navigators in defending the McArdle claims.

**IT IS FURTHER ORDERED** granting Navigators a reasonable attorneys' fees award upon its compliance with L.R.Civ. 54.2.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action and enter judgment accordingly.

Dated this 25th day of September, 2014.

*A. Murray Snow*
/G. Murray Snow
United States District Judge